UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| WALTER VILLANUEVA; JOSE FIDEL MORENO; JOSE JOAQUIN MORENO; RICARDO VILLALOBOS; ALCIDES ALVARENGA; OSCAR CASTRO; CESAR MANUEL ALBARENGA; EMERSON FERNANDO GARCIA; GERSON AMAYA; HUGO RODRIGUEZ; JUAN ANTONIO CONSTANZA; NORWIN SOZA; SAMUEL EDENILSON ANGULO; SAMUEL V. ANGULO; on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> D&JJ INC.; CR CALDERON CONSTRUCTION INC; COSTELLO CONSTRUCTION OF MARYLAND, INC.; COSTELLO CONSTRUCTION INCORPORATED <br><br> Defendants. | Civil Action No.: 20-cv-556 |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

Plaintiffs, Walter Villanueva, Jose Fidel Moreno, Jose Joaquin Moreno, Ricardo

Villalobos, Alcides Alvarenga, Oscar Castro, Cesar Manuel Albarenga, Emerson Fernando

Garcia, Gerson Amaya, Hugo Rodriguez, Juan Antonio Constanza, Norwin Soza, Samuel

Edinilson Angulo, and Samuel V. Angulo ("Plaintiffs"), on behalf of themselves and similarly situated persons, bring this collective and class action lawsuit against Defendants D&JJ Inc., CR Calderon Construction Inc, Costello Construction of Maryland, Inc. and Costello Construction, Inc. ("Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"); the Maryland Wage and Hour Law (the "MWHL"); the Maryland Prevailing Wage Statute (the "MPWS"); the Maryland Wage Payment and Collection Law (the "MWPCL"); and the Maryland Workplace Fraud Act (the "MWFA").

## INTRODUCTION

1. Defendants have perpetrated a more than year-long scheme to deprive workers constructing the new Catonsville Courthouse of their lawfully owed wages. Wage theft and worker misclassification is rampant in the construction industry in the greater Baltimore and District of Columbia metropolitan area.[1] By failing to pay workers in accordance with the law, employers deny employees their lawful wages and benefits while simultaneously underfunding social insurance programs like Social Security, Medicaid, unemployment insurance, and workers' compensation.[2] One way in which misclassification and wage theft are perpetrated is through the use of subcontractors who fail to follow Maryland's wage and misclassification laws.[3] Defendants have engaged in such conduct, the effect of which is to deny employees on their construction site their lawfully owed wages and benefits in violation of federal and Maryland wage and misclassification laws.

---

1 See "Illegal Worker Misclassification: Payroll Fraud in the District's Construction Industry," Issue Brief and Economic Report, D.C. Office of the Attorney General, at 1, (Sept 2019) *available at* https://oag.dc.gov/sites/default/files/2019-09/OAG-Illegal-Worker-Misclassification-Report.pdf .
2 *Id.*
3 *Id.* At 6.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331, which confers jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1337, which confers federal jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce."

3. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), which confers federal subject matter jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." As discussed below, Plaintiff's state-law claims arise from a common set of operative facts—*i.e.,* their employment by Defendants as construction workers at the Catonsville Courthouse project—and are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy.

4. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

5. Plaintiff Walter Villanueva lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

6. Plaintiff Jose Fidel Moreno lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

7. Plaintiff Jose Joaquin Moreno lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

8. Plaintiff Ricardo Villalobos lives in Montgomery County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

9. Plaintiff Alcides Alvarenga lives in Montgomery County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

10. Plaintiff Oscar Castro lives in Woodbridge, Virginia and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

11. Plaintiff Cesar Manuel Albarenga lives in Prince George's County, Maryland and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

12. Plaintiff Emerson Fernando Garcia lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

13. Plaintiff Gerson Amaya lives in Montgomery County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

14. Plaintiff Hugo Rodriguez lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

15. Plaintiff Juan Antonio Constanza lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

16. Plaintiff Norwin Soza lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

17. Plaintiff Samuel Edenilson Angulo lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

18. Plaintiff Samuel V. Angulo lives in Prince George's County, MD and was employed by Defendants at the Catonsville Courthouse Project during the last three years.

19. The majority of the Plaintiffs live within the geographic area of the Greenbelt Division of the United States District Court for the District of Maryland.

20. Defendant D&JJ Inc. ("D&JJ"), is a corporation organized and existing pursuant to the laws of the State of Maryland, with its principal place of business in Silver Spring, Maryland. Defendant D&JJ was a subcontractor of Defendant CRC on the Project.

21. Defendant, CR Calderon Construction Inc. ("CRC"), is a corporation organized and existing pursuant to the laws of the State of Maryland, with its principal place of business in College Park, Maryland.

22. Defendants Costello Construction of Maryland, Inc. and Costello Construction Incorporated ("Costello") are corporations organized and existing pursuant to the laws of the State of Maryland, with their principal place of business in Columbia, Maryland. Defendants Costello were the general contractors on the Project and Defendants CRC and D&JJ were their subcontractors.

23. Defendants employ individuals, including Plaintiffs, and are engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person. Each defendant is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

24. Defendants are employers covered by the minimum wage mandates of the FLSA and MWHL and the prevailing wage mandates of the MPWS.

**FACTS**

25. Defendant Costello was the general contractor responsible for all site work and concrete work for the construction of the new courthouse in Catonsville, Maryland ("the Project"). Defendant Costello subcontracted much of its construction work on the Project to Defendants CRC and D&JJ. Defendant CRC subcontracted much of its construction work to D&JJ.

26. During a period from approximately April 2018 through approximately the fall of 2019 Plaintiffs and similarly situated individuals performed construction work for Defendants at the Project.

27. The Project was constructed pursuant to a public works contract with the State of Maryland.

28. Each Defendant was an employer of each Plaintiff and similarly situated individuals. The employer-employee relationship existed because each Defendant either directly controlled the work of each Plaintiff, including by assigning work tasks to each Plaintiff and by setting each Plaintiff's hours or, alternatively, each Plaintiff's work was controlled by a subcontractor of each Defendant which controlled the work of each Plaintiff, including by assigning work tasks to each Plaintiff and by setting each Plaintiff's hours.  To the extent that any Defendant is not liable as a direct and conventional common law employer of any Plaintiff, such Defendant is liable because a subcontractor of such Defendant was an employer of such Plaintiff.

29. While employed by Defendants at the Project, Plaintiffs and similarly situated individuals often worked in excess of forty hours per week but were not paid at the time and a half overtime rate for such overtime work.

30. While employed by Defendants at the Project, Plaintiffs and similarly situated individuals often worked hours for which they received no compensation.

31. Throughout the existence of the Project, Defendants were obliged to pay specific hourly rates to construction workers on the Project pursuant to legally binding Maryland State prevailing wage rates, which governed all work at the Project.

32. While employed by Defendants at the Project, Plaintiffs and similarly situated individuals were paid less than the hourly rate guaranteed to them under the Maryland State prevailing wage rates.

33. As an employer of the Plaintiffs and/or as the general contractor of the subcontractor that employed the Plaintiffs, Defendants are jointly and severally liable for the Plaintiffs' unpaid wages.

34. At all relevant times, Defendant D&JJ had the power to fire Plaintiffs.

35. D&JJ personally set Plaintiffs' schedule, assigned Plaintiffs' tasks, and supervised Plaintiffs' work.

36. At all relevant times, Plaintiffs were not engaged in an independent business.

37. At all relevant times, Plaintiffs' work activities were within Defendants' usual course of business, as defined by Md. Code, Lab. & Empl. Art. § 3-903(c)(2).

38. At all relevant times, Plaintiffs' work activities were integral to Defendant's usual course of business of providing construction services.

39. At all relevant times, Plaintiffs were legally presumed to be an employee of the Defendants, pursuant to Md. Code, Lab. & Empl. Art. § 3-903(c).

40. No qualifying written contract ever existed between the Defendants and the Plaintiffs pursuant to Md. Code, Lab. & Empl. Art. § 3-903.1(1)(i).

### COLLECTIVE ACTION ALLEGATIONS

41. This action is maintainable, as to the FLSA and MPWS claims, as an opt-in collective action pursuant to the procedures set out in 29 U.S.C. § 216(b).

42. Defendants failed to pay Plaintiffs and all other similarly situated individuals one-and-a-half times their regular rate of pay for those hours worked in excess of forty in any one

workweek, failed to pay minimum wage for all hours worked, and failed to pay Maryland prevailing wages.

43. Defendants' conduct was willful, repeated, knowing, and intentional.

44. This action can, and should, be maintained as a collective action for all claims to unpaid overtime compensation, minimum wages, and prevailing wages that can be redressed under the FLSA and MPWS.

45. For those claims that can be certified as a collective action, Plaintiffs seek certification of these claims as a collective action on behalf of all employees of Defendants on the Project who were not compensated with one-and-a-half times their regular rate of pay for those hours worked in excess of forty in any one workweek, and on behalf of all employees of Defendants on the Project who were denied minimum wage for all hours worked, and on behalf of all employees of Defendants on the Project who were not compensated at Maryland prevailing wages, at any time from the earliest date actionable under the limitations period applicable to the given claim until the date of judgment.

46. Upon information and belief, numerous similarly situated current and former employees of Defendants have been subjected to the same unlawful conduct that Plaintiffs challenge herein.

47. Members of the proposed collective action are similarly situated.

48. Members of the proposed collective action have been subjected to the same or substantially the same pay policies and practices. The identities of the members of the proposed collective action are known to Defendants and can be located through Defendants' records.

49. Plaintiffs hereby consent to be a party plaintiffs in this action under the 29 U.S.C. § 216(b) and the MPWS.  If this case does not proceed as a collective and/or class action, Plaintiffs intend to seek relief individually.

## CLASS ACTION ALLEGATIONS

50. Plaintiffs also bring this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of themselves and those similarly situated for violations of the MWHL, the MWPCL, the MPWS and the MWFA to enjoin Defendants' unlawful conduct and to recover damages, interest, attorneys' fees, costs, and all other relief as appropriate for Defendants' willful statutory violations.  Plaintiffs and all other persons who are or have been employed by Defendants at the Project and 1) have earned an hourly wage less than the Maryland state minimum wage during any workweek since the Project began; 2) have earned an hourly wage less than the prevailing wage to which they were entitled under the MPWS; 3) have been uncompensated for hours worked on the Project; or 4) have been misclassified as independent contractors rather than employees will be referred to jointly as the "Class Members."

51.  Upon information and belief, the number of similarly situated employees employed by Defendants during the duration of the Project are so numerous that joinder of all members is impracticable.

52. The duties and responsibilities of the jobs held by the Class Members were the same as or substantially similar to the duties and responsibilities of the Plaintiffs.

53. Plaintiffs' claims are typical of the claims of Class Members because they are or were subject to the same unlawful deductions as described in this Complaint.

54. Plaintiffs are adequate representatives of the Class Members because Plaintiffs and Class Members are or were subject to, and damaged by, the same unlawful wage theft and misclassification practices as described in this Complaint.

55. Application of Defendants' policies and compensation practice does not depend on the personal circumstances of Plaintiffs or those joining this lawsuit. Rather, the same policy or practice which resulted in the alleged wage theft applies to all class members.

56. Plaintiffs and Class Members each challenge the legality of the policies and practices as described in this Complaint. By advancing their own claims, Plaintiffs will necessarily advance the claims of the Class Members.

57. Plaintiffs will have no conflict with any Class Members and are willing to serve in this representative role.

58. Plaintiffs have retained counsel that is competent and experienced in class action litigation and who will adequately represent the Class Members.

59. Questions of fact and law common to all Class Members will predominate over any questions solely affecting individual Class Members. Among common questions are:

   a. whether Defendants' wage theft policies and practices set forth in this Complaint took place as alleged;

   b. whether Defendants' policies and practices constitute violations of the MWHL, the MPWS, the MWFL and the MWPCL; and

   c. whether Class Members are entitled to relief as requested in this Complaint.

60. Defendants have acted and/or refused to act on grounds generally applicable to all Class Members and relief concerning the class as a whole is therefore appropriate.

61. Because Plaintiffs and Class Members suffered the same harms and challenge the same practices described in this Complaint, a class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large

number of similarlysituated persons to prosecute their common claims in a single forum simultaneously and efficiently, without the duplication of effort and expense and the risk of inconsistent or varying adjudications presented by numerous individuals.

62. No difficulties are likely to be encountered in the management of this class action, and the identity of the Class Members should be readily available from Defendants' records.

63. Additionally, Class Members may be informed of the pendency of this class action by mailing, the internet, or other means.

**COUNT I - VIOLATION OF FLSA MINIMUM WAGE AND OVERTIME PROVISIONS**
**(Against Defendants D&JJ and CRC)**

64. All previous paragraphs are incorporated as though fully set forth herein.

65. Plaintiffs and the Collective Action Members are employees and entitled to the FLSA's protections.

66. Defendants are employers covered by the FLSA and are and were employers of Plaintiffs and the Collective Action Members.

67. The FLSA entitles employees to minimum hourly compensation of $7.25 for hours worked up to 40 in any one week, see 29 U.S.C. § 206(b).

68. The FLSA further requires employers to pay non-exempt employees an overtime premium of one-and-one-half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

69. Defendants failed to pay Plaintiffs and others similarly situated minimum wage for all hours worked andone-and-one-half times their regular hourly rate for hours worked in excess of 40 in any one work week.

70. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

71. Defendants are liable to Plaintiffs and the Collective Action Members under the FLSA § 216(b), for all unpaid overtime wages, plus an equal amount in liquidated damages, plus interest (both pre- and post- judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

### COUNT II - VIOLATION OF MWHL MINIMUM WAGE AND OVERTIME PROVISIONS
### (Against Defendants D&JJ and CRC)

72. All previous paragraphs are incorporated as though fully set forth herein.

73. Plaintiffs and the Class Action Members are employees and entitled to the MWHL's protections.

74. Defendants are employers covered by the MWHL and are and were employers of Plaintiff and the Class Action Members.

75. The MWHL entitles employees to minimum hourly compensation of $10.10 for hours worked under 40 in a week (and $9.25 for hours worked under 40 in a week between July 1, 2017 and June 30, 2018).

76. The MWHL further requires employers to pay employees an overtime wage of at least 1.5 times the usual hourly wage for hours worked over 40 in a week.

77. Defendants failed to pay Plaintiffs and others similarly situated minimum wage for all hours worked and one-and-one-half times their regular hourly rate for hours worked in excess of 40 in any one work week.

78. In violating the MWHL, Defendants acted willfully and with reckless disregard of clearly applicable MWHL provisions.

79. Defendants are liable to Plaintiffs and the Class Action Members for all unpaid overtime wages, plus liquidated damages, plus interest (both pre- and post- judgment), attorney's fees, costs, and any other and further relief this Court deems appropriate.

### COUNT III - VIOLATION OF MARYLAND WAGE PAYMENT AND COLLECTION LAW
**(Against All Defendants)**

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Plaintiffs and the Class Action Members are employees and entitled to the MWPCL's protections.

82. Defendants are employers covered by the MWPCL and are and were employers of Plaintiffs and the Class Action Members.

83. Under the MWPCL, § 3-502, Defendants were required to pay Plaintiffs and Class Members all wages due for work performed.

84. For each hour worked Defendants were required to pay Plaintiffs the greater of: (1) the wages they were promised, (2) the "prevailing wage rate" required by state law, (3) or, for qualifying hours, the overtime rate they were entitled to pursuant to state and federal law.

85. Defendants failed to timely pay Plaintiffs and Class Members their required wage rate for all hours they worked, in violation of the MWPCL, § 3-502.

86. Under the MWPCL, "a general contractor on a project for construction services is jointly and severally liable for a violation of this subtitle that is committed by a subcontractor, regardless of whether the subcontractor is in a direct contractual relationship with the general contractor." MWPCL, § 3-507.2

87. Defendants' violations of the MWPCL were repeated, willful, intentional, and in bad faith.

88. Defendants are liable to Plaintiff and the Class Members under the MWPCL, § 3-507.1 for three times their unpaid wages, interest (both pre- and post- judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

## COUNT IV – VIOLATION OF MARYLAND PREVAILING WAGE STATUTE
### (Against All Defendants)

89. The MPWS provides that: a) "each contractor and subcontractor under a public work contract shall pay not less than the prevailing wage rate of straight time to an employee for each hour that the employee works"; and b) "A contractor and subcontractor shall pay an employee the prevailing wage rate of overtime for each hour that the employee works: (1) in excess of 10 hours in any single calendar day; (2) in excess of 40 hours per each workweek; or (3) on Sunday or a legal holiday." Md. Code Ann. § 17-214.

90. The Project was constructed pursuant to a public work contract and Defendants were contractors and/or subcontractors under a public work contract. Plaintiffs were employees of Defendants on the Project.

91. Throughout the Project, Defendants failed to pay the prevailing wage rate of straight time to Plaintiffs and failed to pay the prevailing wage rate of overtime for each overtime hour worked on the Project.

92. The MPWS provides that "If an employee under a public work contract is paid less than the prevailing wage rate for that employee's classification for the work performed, the employee is entitled to sue to recover the difference between the prevailing wage rate and the amount received by the employee."

93. The MPWS further provides that "[t]he court may order the payment of double damages or treble damages under this section if the court finds that the employer withheld wages or fringe benefits willfully and knowingly or with deliberate ignorance or reckless disregard of the

employer's obligations under this subtitle" and "the court shall award a prevailing plaintiff reasonable counsel fees and costs." Md. Code Ann. § 17-224.

94. The MPWS further provides that "[t]he contractor and subcontractor shall be jointly and severally liable for any violation of the subcontractor's obligations under this section." Md. Code Ann. State. Fin. & Proc. § 17-224.

95. Defendants' violations of the MPWS were repeated, willful, intentional, and in bad faith.

96. Defendants are liable to Plaintiff and similarly situated employees under the MPWS for three times their unpaid wages, interest (both pre- and post- judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

**COUNT V – VIOLATIONS OF MARYLAND WORKPLACE FRAUD LAW**
**(Against Defendant D&JJ)**

97. Plaintiffs were employed by Defendant D&JJ for "construction services" within the meaning of the MWFA, Md. Code, Lab. & Empl. Art. § 3-901.

98. Defendant D&JJ was an "employer" of Plaintiffs within the meaning of the MWFA, Md. Code, Lab. & Empl. Art. § 3-901.

99. The MWFA forbids employers from misclassifying employees as independent contractors. Md. Code, Lab. & Empl. Art. § 3-903.

100. Defendant D&JJ violated the MWFA by knowingly misclassifying Plaintiffs as independent contractors.

101. Defendant's violations of the MWFA were willful.

102. As a result of Defendant's misclassification, Plaintiffs were not paid an overtime premium for hours worked in excess of 40 in any one workweek and did not receive other benefits and protections of attributable to employees.

103.   For their violations of the MWFA, Defendant D&JJ is liable to Plaintiffs and similarly-situated employees for unpaid overtime wages, plus an amount equal to three times the unpaid overtime wages as damages, plus interest, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request that the Court:

1. Declare this action to be maintainable as a collective action pursuant to the FLSA and MPWS, and direct Defendants to provide to Plaintiff a list of all Collective Action Members, including the last known address and telephone number of each such person, so that Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it.

2. Determine the damages sustained by the Plaintiffs as a result of Defendants' willful and intentional violations of the FLSA, 29 U.S.C. § 207(a), and award such damages against Defendants in favor of Plaintiffs and all similarly situated individuals, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law;

3. Declare this Action to be maintainable as a Class Action as to the claims brought under the Maryland laws pursuant to Fed. R. Civ. P. 23;

4. Determine the damages sustained by Plaintiff and Class Members during the Class Period as a result of Defendants' willful and intentional violations of the MWHL, the MWPCL, MPWS and MWFL and award all appropriate damages resulting therefrom to Plaintiff and Class Members;

5. Determine that injunctive relief is appropriate as to the Plaintiff and Class Members and enjoin Defendants from continuing to violate the FLSA, the MWHL, the MWPCL, the MPWS and the MWFL.

6. Award Plaintiffs their costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees and other associated costs; and

7. Grant Plaintiffs and all similarly situated individuals such other and further relief as this Court may deem just and proper.

                  Respectfully submitted,

Dated:  February 28, 2020

              /s/ *Matthew Handley*
            Matthew K. Handley (Bar No. 18636)
           HANDLEY FARAH
           & ANDERSON PLLC
           777 6th Street, NW
           Eleventh Floor
           Washington, DC 20001
           Phone:  (202) 559-2411
           mhandley@hfajustice.com

              /s/ *Matthew Kaplan*
           Matthew B. Kaplan (D. Md. Bar No. 18724)
           THE KAPLAN LAW FIRM
           1100 N Glebe Rd
           Suite 1010
           Arlington, Virginia 22201
           Tel. (703) 665-9529
           mbkaplan@thekaplanlawfirm.com

           *Attorneys for Plaintiffs*